**Pablo DIAZ, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 13-94-117-CR.**

Court of Appeals of Texas, Corpus Christi.

June 15, 1995.

Fred Jimenez, Corpus Christi, Mary Esther Guerra, Corpus Christi, for appellant.

Carlos Valdez, Dist. Atty., Corpus Christi, Vincent Gonzalez, Asst. Dist. Atty., Kingsville, for appellee.

Before DORSEY, ONION[1] and AKIN[2], JJ.

## OPINION

ONION, Justice (Assigned).

This appeal is taken from a conviction for aggravated possession of marihuana of 200 pounds or less but more than 50 pounds. Act of May 18, 1989, 71st Leg., R.S., ch. 678, § 1, 1989 Tex.Gen.Laws 2230, 2939 (Tex. Health & Safety Code § 481.121(c), (d)(1), since amended).[3] In a bench trial, appellant Pablo Diaz entered a plea of guilty to the

indictment without a plea bargain. The trial court assessed punishment at 54 years' imprisonment and a fine of $10,000.00.

Appellant advances seven points of error. First, appellant contends that his plea of guilty was not voluntarily, knowingly and intelligently made. Second, appellant urges that his court-appointed trial counsel rendered ineffective assistance of counsel in violation of his constitutional rights. *See* U.S. Const., amends. VI and XIV; TEX. CONST. ART. I § 10. Appellant also contends that the trial court erred in denying a post-trial motion to weigh the substance without its wrappings to determine if the substance exceeded 50 pounds. The remainder of the points of error urge that the trial court erred in relying upon evidence outside the record in assessing punishment at one year for each pound of marihuana found, in failing to provide an impartial forum for the assessment of punishment, and in denying appellant's offer of proof or his right to perfect a bill of exception at the hearing on the motion for a new trial.

We shall consider the first two points of error together. Most of the evidence regarding the voluntariness of the plea and the issue of ineffective assistance of counsel are gleaned from the guilty plea proceedings, the hearing on the motion to weigh the substance without its wrappings, and the hearing on the motion for new trial. The voluntariness of a guilty plea is determined by the totality of the circumstances. *Gibson v. State,* 747 S.W.2d 68, 70 (Tex. App.—Corpus Christi 1988, no pet.). Without question now, a complaint of ineffective assistance of counsel may be raised in a motion for new trial. *Reyes v. State,* 849 S.W.2d 812, 815 (Tex.Crim.App.1993).

The record shows that appellant was indigent and that the trial court first appointed attorney J.J. Martinez to represent appellant. After a "ruckus" with the prosecutor,

---

1. Assigned to this Court by the Chief Justice of the Supreme Court of Texas pursuant to TEX. GOV'T CODE ANN. § 74.003 (Vernon 1988).

2. Assigned to this Court by the Chief Justice of the Supreme Court of Texas pursuant to TEX. GOV'T CODE ANN. § 74.003 (Vernon 1988).

3. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.121 (Vernon Supp.1995), effective September 1, 1994.

Martinez, by written motion filed December 2, 1993, requested to withdraw. The trial court permitted the withdrawal of counsel on December 6, 1993. Appellant entered a guilty plea on December 8, 1993, while represented by his second appointed counsel of whom he now complains. Appellant's trial counsel testified at the post-trial hearings that he had been appointed approximately two weeks before the guilty plea but there was "much confusion going on because of the two attorneys." [4]

At the guilty plea proceedings, the trial court communicated with appellant through the official court interpreter, having determined that appellant did not "understand the English language." The trial court also determined that appellant was the person named in the indictment (which alleged the offense was committed in Kenedy County on or about May 8, 1993) [5] and that appellant was pleading guilty freely and voluntarily and that appellant understood that there was no plea bargain. The State then introduced State's exhibit No. 1, a boilerplate judicial confession in English signed and sworn to by appellant. Two unsworn offense reports were also admitted into evidence without objection. The offense reports indicated the weight of the marihuana was approximately 54 pounds. One of the offense reports indicated appellant had a negative criminal record and there were no outstanding arrest warrants.

The State offered no evidence on the issue of punishment. See Tex.Code Crim.Proc. Ann. art. 37.07 § 3(a) (Vernon Supp.1995). Appellant had filed a sworn motion for probation stating that he had never been convicted of a felony, but appellant's counsel offered no evidence to support the motion. [6]

At the conclusion of the guilty plea proceedings, the trial court asked the State for a recommendation as to punishment. The prosecutor recommended "a ten-year deferred probation, a $6,500.00 fine, a KSO storage fee in the amount of $54.00." The trial court, who had determined from appellant that he lived in Immokalee, Florida, made the following statement:

> In this case the defendant had in his possession 54 pounds of Marihuana. Unfortunately, (sic) he was stopped, but there's many others who have not been stopped. As I said before, this Court has seen many defendants go through this Court who are from this particular city or township in Florida that are being used to transport Marihuana. It's got to stop. And the message has got to get to that community that the people from that community should not be preyed upon, they should not accept these criminal activities that corrupt and endanger and harm this country. It's got to stop and I will do my part to put a stop to it. I'm, not going to follow the recommendation of counsel.

Thereafter, the trial court assessed punishment at 54 years' imprisonment and a fine of $10,000.00.

Subsequently, appellant, represented by a third counsel, [7] filed a motion to allow the weighing of the contraband and a motion for a new trial. At the hearing on the former motion, an investigator for appellant's counsel testified that with the Sheriff's permission the contraband had been reweighed and that the 36 bundles weighed 53 pounds and 6 ounces. He estimated that the wrapping and duct tape on the bundles would weigh 3½ to 4 pounds. The trial court denied the motion to

---

4. There appears no dispute that appellant's trial counsel was appointed but the date of his appointment, the order of his appointment, or even a notation on the docket sheet have not been found in the appellate record.

5. Appellant's counsel made no objection to appellant being tried in a county other than where the offense occurred. See Tex.Code Crim.Proc. Ann. art. 13.22 (Vernon Supp.1995); Granados v. State, 843 S.W.2d 736, 737 (Tex.App.—Corpus Christi 1992, no pet.).

6. Appellant's plea of guilty to a felony was before the trial court. There is no statutory requirement of a sworn motion for probation nor required proof that appellant has never been convicted of a felony as there is when the issue of punishment is decided by a jury. See Tex.Code Crim.Proc.Ann. art. 42.12 §§ 3, 4(e) (Vernon Supp.1995). Nevertheless, it is better practice in a bench trial to proceed with a written motion and proof.

7. The record does not clearly reflect whether this counsel was appointed or retained.

reweigh the substances without the wrappings and tape. The next day the hearing on the motion for new trial was conducted.

Appellant's trial counsel testified at both hearings. He revealed that he had not examined or inspected the contraband involved in the instant case or asked that it be weighed without its wrappings to determine its true weight. Counsel had learned that the marihuana weighed approximately 54 pounds and knew that the offense was aggravated possession of marihuana because the amount supposedly was over 50 pounds. Based on his knowledge and experience with drug cases in Kleberg County, counsel knew that defendants generally got deferred adjudication or probation when the amount of marihuana ranged from 49 to 58 pounds. In fact, counsel had handled a case involving possession of 300 pounds of marihuana where the defendant received probation.

Counsel related that he attempted to reach a plea bargain with the prosecutor but that she insisted on an agreement where appellant would pay a $2,000.00 fine "up front." No agreement could be reached because appellant was indigent. Counsel then advised appellant to enter a plea of guilty without a plea bargain, told appellant that he would get probation, and promised appellant that appellant would be home for Christmas. Counsel explained that this advice was based on his own three-year experience in handling approximately one hundred cases in Kleberg County, and he knew this to be particularly true when a defendant had no history of violence, no arrest record, no weapon at time of arrest, and who did not resist arrest, all of which was applicable to appellant's situation.

On the day of the trial, counsel left appellant alone with an interpreter to have various documents and waivers of rights translated for appellant who spoke no English. When counsel returned to the room, he asked if appellant had any questions. After receiving a negative answer, counsel had appellant sign the various documents written in English, and counsel signed the certificate and other forms indicating that he had personally read to and explained to appellant the waiver of rights and contents of the documents when, in fact, he had not done so.

Counsel further stated that he believed that appellant relied on his statements that appellant would receive probation and be home by Christmas, that appellant, with his lack of education, had "put his trust in my hands, and unfortunately I dropped it." Counsel revealed that he told appellant to answer the questions of the Judge "and everything is going to be O.K."[8] Counsel felt that appellant would pay more attention to him than the Judge reciting admonishments.

Pablo Diaz testified through an interpreter that he entered a guilty plea to the indictment. The 31–year–old appellant, a native of Mexico, attended school there through the 6th grade, had a limited ability to read and write the Spanish language, but could not read, write or understand the English language. He had received no education in the United States. He was married, had four children, and lived in Immokalee, Florida, where he worked as a laborer.

---

8. This matter was also touched upon when counsel testified at the hearing on the motion to allow the weighing of the contraband:

THE COURT: Are you telling me that you told your client that regardless of what his understanding was of the proceedings that he was to answer my questions a certain way just to go through the hearing?
THE WITNESS: [Appellant's trial counsel] You Honor, I think I may have done that. I'm not sure. I—
THE COURT: You told him to answer all the questions that I would pose to him, to make sure that I knew that he understood what he was going through?
THE WITNESS: No, Your Honor, that I did not do.

THE COURT: Because if you did, then I cannot allow you to practice in this court, because I will not be satisfied that you will have done your job in effectively advising the persons who are to appear before this Court with you as a lawyer. Because then every guilty plea in which you appear as lawyer would be suspect. If that's what you're telling me then the consequences are very dire for you. So I want to know what you're telling me.
THE WITNESS: I understand that, Your Honor, about what the consequences are for me doing this, but I also understand that justice has to be served at this point.

Appellant testified that his attorney told him that he would get probation and be home by Christmas, and because of these representations he entered a plea of guilty. He relied upon the advice of his attorney. Appellant stated that he did not understand he had constitutional rights, particularly such rights as the right to trial by jury and the right of confrontation of witnesses. "I did not know because I did not understand. I was only confiding or based on what my attorney had told me." Appellant did acknowledge that his rights were read to him in Spanish and that he had signed "those papers, waivers (in English) following the indications of my attorney."

Appellant revealed that he did not understand that he was being sentenced to 54 years in prison until he was leaving the courtroom. Eight days later in jail appellant wrote a letter in Spanish to the trial court contending that there was a misunderstanding.

■ In Texas, a defendant in a criminal case is entitled to reasonably effective assistance of counsel. *Wilkerson v. State,* 726 S.W.2d 542, 548 (Tex.Crim.App.1986), *cert. denied,* 480 U.S. 940, 107 S.Ct. 1590, 94 L.Ed.2d 779 (1987); *Haynes v. State,* 790 S.W.2d 824, 826 (Tex.App.—Austin 1990, no pet.). In *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the Supreme Court held that in order to show ineffective assistance of counsel, a convicted defendant must (1) show that his trial counsel's performance was deficient, in that counsel made such serious errors he was not functioning effectively as counsel, and (2) show that the deficient performance prejudiced the defense to such a degree that the defendant was deprived of a fair trial. *Id.* at 687, 104 S.Ct. at 2064.

■ The *Strickland* standard has been adopted in Texas for resolving allegations of ineffective assistance of counsel under both the federal and state constitutions. *Hernandez v. State,* 726 S.W.2d 53, 56–57 (Tex.Crim. App.1986). The two-pronged test of *Strickland* is applicable to guilty pleas. *Hill v. Lockhart,* 474 U.S. 52, 57, 106 S.Ct. 366, 369–70, 88 L.Ed.2d 203 (1985); *Ex parte Pool,* 738 S.W.2d 285, 286 (Tex.Crim.App.1987).

*Ex parte Dumitru,* 850 S.W.2d 243, 245 (Tex. App.—Houston [1st Dist.] 1993, no pet.); *Larson v. State,* 759 S.W.2d 457, 460 (Tex. App.—Houston [14th Dist.] 1988), pet. ref'd, *cert. denied,* 490 U.S. 1008, 109 S.Ct. 1646, 104 L.Ed.2d 161 (1989). Under the first part of the *Strickland* test as applied to guilty pleas, the defendant must show that his counsel's performance fell below an objective standard of reasonableness and, once this burden is met, a defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have entered his plea and would have insisted on going to trial. *Hill,* 474 U.S. at 59, 106 S.Ct. at 370–71; *Pool,* 738 S.W.2d at 286.

■ Whether the *Strickland* standard has been met is to be judged by the totality of the representation rather than by isolated acts or omissions of trial counsel and the test is applied at the time of the trial, and not through hindsight. *Bridge v. State,* 726 S.W.2d 558, 571 (Tex.Crim.App.1986); *Wilkerson,* 726 S.W.2d at 548; *Ferguson v. State,* 639 S.W.2d 307, 310 (Tex.Crim.App.1982). The burden of proving ineffective assistance of counsel rests upon the convicted defendant by a preponderance of the evidence. *Moore v. State,* 694 S.W.2d 528, 531 (Tex.Crim.App. 1985). The particular facts and circumstances of each case must be considered in any claim of ineffective assistance. *Johnson v. State,* 691 S.W.2d 619, 626 (Tex.Crim.App. 1984), *cert. denied,* 474 U.S. 865, 106 S.Ct. 184, 88 L.Ed.2d 152 (1985).

■ Counsel has the duty to make an independent investigation of the facts of his client's case and prepare for trial. *Ex parte Langley,* 833 S.W.2d 141, 143 (Tex.Crim.App. 1992). It is fundamental that an attorney must have a firm command of the facts of the case as well as the governing law before the attorney can render reasonable effective assistance of counsel. *Ex parte Welborn,* 785 S.W.2d 391, 393 (Tex.Crim.App.1990); *Ex parte Ybarra,* 629 S.W.2d 943, 946 (Tex.Crim. App.1982). A natural consequence of this notion is that counsel has the responsibility to seek out and interview potential witnesses. *Ex parte Lilly,* 656 S.W.2d 490, 493 (Tex. Crim.App.1983). That duty cannot be

sloughed off to an investigator, nor may counsel rely exclusively upon either the prosecutor's representations of the facts or the veracity of the defendant's version of the facts. *Haynes,* 790 S.W.2d at 827.

■ In the instant case, counsel did not seek out and attempt to interview the arresting officers or other witnesses. He accepted the approximate weight of the substance involved as set forth in the offense reports. He did not examine or inspect the substance. Moreover, counsel did not ask for a quantitative analysis of the substance nor move to have the substance weighed without the wrappings to determine if the substance weighed less than fifty pounds so that the offense might be reduced. There is no showing that appellant's counsel researched the applicable law. After being rebuffed by the prosecution in an attempt to reach a plea bargain for the indigent appellant, counsel advised appellant to plead guilty without a plea bargain, promising appellant probation and that appellant would be home by Christmas. Counsel did not personally read or explain to appellant what was contained in the various waivers and documents, but certified on the documents that he had done so. He told appellant to answer the court's questions and everything "is going to be O.K." When the non-English speaking appellant told the court that his counsel had personally explained his rights to him, counsel did not correct appellant. He misled the trial court.

The combination of these circumstances verify that appellant's trial counsel's representation fell below an objective standard of reasonableness, *Welborn,* 785 S.W.2d at 396. In no sense can counsel's conduct be considered sound trial strategy. *Ex parte Dunham,* 650 S.W.2d 825, 827 (Tex.Crim.App. 1983). Counsel's unprofessional errors undermined the confidence of the case.

■ A plea of guilty is not knowingly and voluntarily entered if it is made as a result of ineffective assistance of counsel. *Ex parte Burns,* 601 S.W.2d 370, 372 (Tex. Crim.App.1980). Thus, the validity of a guilty plea depends on whether it was entered voluntarily and made intelligently, and if upon advice of attorney, whether counsel was reasonably competent and rendered effective assistance. *Curry v. State,* 861 S.W.2d 479, 483 (Tex.App.—Fort Worth 1993, pet. ref'd.).

■ Generally, a plea of guilty entered without a plea bargain waives all nonjurisdictional defects. *Helms v. State,* 484 S.W.2d 925, 927 (Tex.Crim.App.1972); *Soto v. State,* 837 S.W.2d 401, 403 (Tex.App.— Dallas 1992, no pet.). This waiver rule is, however, predicated on a knowing and voluntary plea of guilty, and thus, a defendant may always challenge the voluntariness on appeal. *Broddus v. State,* 693 S.W.2d 459, 460 (Tex.Crim.App.1985); *Soto,* 837 S.W.2d at 403. The lack of a plea bargain in the instant case does not prevent appellant from challenging the voluntariness of his plea.

Appellant, who apparently had no previous court experience, testified that his guilty plea was based on counsel's representations. Appellant acknowledged that his "rights" were read to him in Spanish, but the record reveals that this was done by an "interpreter" whose identity was not established. Whether this "interpreter" was qualified and sworn is not shown. Counsel was not present and did not explain these "rights" to appellant. Appellant did not understand the meaning of constitutional guarantees. He acknowledged that he signed the waivers and documents (in English), but explained, that he did so "following the indications of my attorney."

■ A plea of guilty should not be accepted by the trial court unless it appears that the plea is voluntary. *Holland v. State,* 761 S.W.2d 307, 320 (Tex.Crim.App.1988), *cert. denied,* 489 U.S. 1091, 109 S.Ct. 1560, 103 L.Ed.2d 863 (1989) (citing *Brady v. United States,* 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970)); *Garcia v. State,* 877 S.W.2d 809, 812 (Tex.App.—Corpus Christi 1994, pet. ref'd.). The purpose of article 26.13 of the Texas Code of Criminal Procedure is to assure the voluntariness of guilty pleas. TEX.CODE CRIM.PROC.ANN. art. 26.13 (Vernon 1989); *Smith v. State,* 857 S.W.2d 71, 73 (Tex.App.—Dallas 1993, pet. ref'd.).

Article 26.13, inter alia, sets out the following required admonishments:

(a) Prior to accepting a plea of guilty or a plea of nolo-contendere, the court shall admonish the defendant of:

(1) the range of punishment attached to the offense;

(2) the fact that the recommendation of the prosecuting attorney as to punishment is not binding on the court;

(4) the fact that if the defendant is not a citizen of the United States of America, a plea of guilty or nolo contendere for the offense charged may result in deportation, the exclusion from admission to this country, or the denial of naturalization under federal law.

Tex.Code Crim.Proc.Ann. art. 26.13(a) (Vernon 1989).

▆ Article 26.13(d) allows the trial court to admonish the defendant as to consequences of his plea orally or in writing. Tex. Code Crim.Proc.Ann. art. 26.13(d) (Vernon 1989). *Munoz v. State,* 840 S.W.2d 69, 79 (Tex.App.—Corpus Christi 1992, pet. ref'd.); *Blanco v. State,* 771 S.W.2d 598, 599 (Tex. App.—Corpus Christi 1989, no pet.). In the instant case, the trial court orally admonished appellant in part, but relied in large measure upon the written admonitions to meet all of the requirements of article 26.13. The trial court orally inquired of appellant if he was "fully aware of the range of punishment that is applicable to your case?" Appellant, through the interpreter, answered "yes, sir," but the range of punishment was never orally stated by the trial court or anyone else during the proceedings. During the oral admonishments, the trial court stated to appellant: "I have before me several documents that appear to have your signature." The trial court then inquired if the "documents" had been read to appellant in a language he understood. At no time was there an express reference to the written admonitions. The non-citizen-deportation consequences admonition was not orally mentioned but it and the range of punishment are found in the written admonitions filed in the record. This document was apparently one of the documents executed under the conditions explained by appellant and his counsel. Article 26.13(a) is mandatory and requires that no one but the trial court itself

admonish the appellant. *Whitten v. State,* 587 S.W.2d 156, 158 (Tex.Crim.App.1979) (op. on reh'g.); *Murray v. State,* 561 S.W.2d 821, 822 (Tex.Crim.App.1977). This is true even if the defense counsel or the prosecutor correctly informed the defendant of the range of punishment. *Nguyen v. State,* 859 S.W.2d 437, 439 (Tex.App.—Houston [1st Dist.] 1993, pet. ref'd). Non-compliance with article 26.13 is not urged as a separate point of error, but the foregoing description of events is part and parcel of the totality of the circumstances by which the voluntariness of a guilty plea is determined. *Munoz,* 840 S.W.2d at 74.

From the totality of counsel's representation and the totality of the circumstances surrounding the guilty plea, we conclude that appellant has sustained his burden to show that his guilty plea was not knowingly, intelligently and voluntarily made and that he was not accorded the effective assistance of counsel. The trial court abused its discretion in denying the motion for new trial. We sustain appellant's first and second points of error.

In view of our disposition of points of error one and two, we need not reach appellant's other contentions.

The judgment is reversed and the cause is remanded to the trial court.